IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CHAKAKHAN R. DAVIS                                                                PLAINTIFF

V.                                                              CAUSE NO. 3:15-CV-874-CWR-LRA

HINDS COUNTY, MISSISSIPPI;                                                      DEFENDANTS
TYRONE LEWIS; JERRY ARINDER;
BRENDA JONES; JOHNNY JENKINS

## ORDER

Before the Court are two motions to dismiss. In the first, all of the defendants seek dismissal of the plaintiff's state-law claims. In the second, the individual defendants seek dismissal of the plaintiff's federal claims. The motions are fully briefed and ripe for adjudication.

After considering the allegations, arguments, and applicable law, the first motion will be granted in full, while the second will be granted in part and denied in part.

### I.    Factual and Procedural History

The following allegations are drawn from the First Amended Complaint and taken as true for present purposes.

On December 8, 2014, Chakakhan Davis was arrested for disturbing the peace by Hinds County Sheriff's Deputies Jerry Arinder and Johnny Jenkins. The deputies lacked probable cause to make the arrest, intentionally handcuffed Davis too tightly, and then ignored her complaints about her wrists, which became bruised and swollen.

Upon arrival at the jail, Davis asked Officer Brenda Jones for medical attention. Jones and another officer proceeded to threaten Davis, slam her against the wall, place her in a choke hold, and press a knee into her lower back. The officers then retaliated against Davis by placing

her in a holding cell with a violent inmate and ignoring Davis's requests for blankets. Later, while housed at a separate Hinds County jail, Davis's medical requests were ignored.

Davis was eventually released without being charged with a crime. An employee of the Hinds County Justice Court told her that they had no records on file for her.

Davis subsequently filed this suit in state court. The defendants removed it here.

Her amended complaint alleges constitutional claims for false arrest, excessive force, cruel and unusual punishment, denial of due process, denial of equal protection, and reckless training and supervision. Davis also brings state-law claims under the Mississippi Tort Claims Act, for abuse of process, and for malicious prosecution. She seeks $1.9 million in economic and non-economic damages, as well as punitive damages.

## II.     Legal Standard

Because the defendants have answered the amended complaint, the present motions are considered motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

> The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. The plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (quotation marks and citations omitted).

## III.    Discussion

At the outset, it should be noted that Davis's response brief does not address the vast majority of her opponents' arguments for dismissal. The first half of her brief concerns default judgments, stays of discovery, and discovery sanctions. Part of her brief defends her federal (*Monell*) claim against Hinds County, although Hinds County has not moved to dismiss any of

the federal claims against it. And on the rare occasions Davis mentions the merits, she often makes conclusory statements like, "Plaintiff has stated a cognizable claim against the Defendants . . . ," with no additional substantive explanation. Docket No. 32, at 11.

For the state-law claims, for example, Davis does not respond to the defendants' contentions that her Notice of Claim was inadequately served under state law and that she has failed to state a claim for abuse of process or malicious prosecution. The federal claims fare only marginally better.

There is a strong argument that the majority of Davis's claims are due to be dismissed as abandoned. *See Acadia Ins. Co. v. Hinds Cnty. Sch. Dist.*, No. 3:12-CV-188, 2013 WL 2182799, at *5 (S.D. Miss. May 20, 2013); *Russell v. City of Magee, Miss.*, No. 3:11-CV-637, 2013 WL 1305498, at *2 (S.D. Miss. Mar. 26, 2013) ("Omissions in Russell's briefing indicate that he has abandoned his claims against the City of Magee, his state law claims, and some of his federal theories of relief."). Davis, however, is a pro se litigant to whom courts extend some leniency. *See Fujita v. United States*, 416 F. App'x 400, 402-03 (5th Cir. 2011); *Jones v. FJC Sec. Servs., Inc.*, 612 F. App'x 201, 203 (5th Cir. 2015). Therefore, out of an abundance of caution, the Court will proceed to analyze the merits of the dispute as best as possible.

    **A.**    **State-Law Claims**

The Mississippi Tort Claims Act (MTCA) imposes stringent requirements on persons wishing to sue state agencies, subdivisions, and employees. *See Little v. Mississippi Dep't of Human Servs.*, 835 So. 2d 9, 12 (Miss. 2002). One of those requirements instructs the prospective plaintiff to serve a detailed Notice of Claim upon a specific government official. *See* Miss. Code Ann. § 11-46-11. If the prospective plaintiff wants to sue a county, for example, she must send her Notice of Claim to the Chancery Clerk of that county. *Id.* § 11-46-11(2)(a)(i)(1).

Here, Davis served a Notice of Claim upon the Hinds County Board of Supervisors and the Sheriff's Department. *See* Docket No. 19, at 6. That was incorrect. Mississippi law required her to serve the Chancery Clerk. Because Davis did not serve the correct official, all of her claims brought pursuant to the MTCA must be dismissed without prejudice. *See Tallahatchie Gen. Hosp. v. Howe*, 154 So. 3d 29, 30 (Miss. 2015).

As for Davis's other state-law claims, abuse of process requires her to allege that "(1) the party [*i.e.*, the defendant] made an illegal use of a legal process, (2) the party had an ulterior motive, and (3) damage resulted from the perverted use of process." *Ayles ex rel. Allen v. Allen*, 907 So. 2d 300, 303 (Miss. 2005) (citation omitted). "[T]he crucial element of this tort is the intent to abuse the privileges of the legal system." *Id.* (citation omitted). Malicious prosecution requires her to allege, among other things, "the institution or continuation of original judicial proceedings, either criminal or civil." *Bearden v. BellSouth Telecommunications, Inc.*, 29 So. 3d 761, 764 (Miss. 2010) (citation omitted).

Davis has failed to articulate necessary elements of these claims. She does not say that the defendants filed legal process or instituted judicial proceedings. She was admittedly released without charges. As a result, this motion for judgment on the pleadings is granted.

### B. Federal Claims

#### 1. Qualified Immunity Standard

The individual defendants have invoked the defense of qualified immunity.

"Qualified immunity shields government officials from civil damages liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 578 (5th Cir. 2009) (quotation marks and citation omitted). "More precisely, the contours of the right

4

must be sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . in the light of pre-existing law the unlawfulness must be apparent." *Id.* (quotation marks, citation, and brackets omitted).

A qualified immunity analysis requires the Court to decide two issues: "(1) whether facts alleged or shown by plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Id.* (citations omitted).

It is undisputed that the constitutional rights Davis seeks to vindicate were clearly established at the time of her arrest and detention. *E.g.*, *Brooks v. City of West Point, Miss.*, --- F. App'x ---, 2016 WL 556360, at *2 (5th Cir. Feb. 11, 2016). The question today is whether her allegations state a claim which overcomes the officers' entitlement to qualified immunity.

### 2. False Arrest

"In order to prevail in a [42 U.S.C.] § 1983 claim for false arrest, a plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment." *Parm v. Shumate,* 513 F.3d 135, 142 (5th Cir. 2007) (citation omitted). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Haggerty v. Tex. S. Univ.,* 391 F.3d 653, 655-56 (5th Cir. 2004) (quotation marks and citation omitted).

When the defense of qualified immunity is asserted in a false arrest case, "the plaintiff must show that the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime." *Good v. Curtis,* 601 F.3d 393, 401 (5th Cir. 2010) (citations omitted). "[L]aw enforcement officials who reasonably but mistakenly conclude that probable

cause is present are entitled to [qualified] immunity." *Club Retro, L.L.C. v. Hilton,* 568 F.3d 181, 206 (5th Cir. 2009) (quotation marks and citation omitted).

Here, Davis has failed to show that the deputies could not have reasonably believed that they had probable cause to arrest her for disturbing the peace. This claim will be dismissed.

### 3. Excessive Force

Davis alleges excessive force in two ways: the too-tight handcuffs claim against Deputies Arinder and Jenkins, and the jail assault claim against Officer Jones.

> The Due Process Clause, applicable to the States via the Fourteenth Amendment, protects a pretrial detainee from excessive force that amounts to punishment. The standard for analyzing an excessive force claim under the Fourteenth Amendment is the same as the Eighth Amendment standard. This right is violated if there is (1) more than a de minimis injury, (2) which resulted directly and only from the use of force that was excessive to the need, and (3) the force was objectively unreasonable.

*Vanderburg v. Harrison Cnty., Miss.*, 716 F. Supp. 2d 482, 486 (S.D. Miss. 2010) (quotation marks and citations omitted). "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (citation omitted).

In the Fifth Circuit, "handcuffing too tightly, without more, does not amount to excessive force." *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (quotation marks and citations omitted). Plaintiffs may proceed only when their injuries are more severe, such as when the handcuffs cause "deep cuts," "permanent scarring," and "nerve injury." *Dominguez v. Moore*, 149 F. App'x 281, 283 (5th Cir. 2005).

6

Davis's allegations fall into the former category. Swelling and bruising, while unfortunate, are by themselves de minimis injuries incidental to being arrested. *E.g.*, *Glenn*, 242 F.3d at 314. The excessive force claim against Deputies Arinder and Jenkins will be dismissed. When coupled with the above, those two defendants will be dismissed completely from this suit.

Davis's excessive force claim against Officer Jones, in contrast, adequately states a claim. According to the amended complaint, Officer Jones responded to a boilerplate request for medical attention with extreme violence disproportionate to any security interest. *See Kingsley*, 135 S. Ct. at 2473. Whether Officer Jones's actions were truly objectively unreasonable will have to await the facts adduced in a discovery period limited to qualified immunity. *See Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999).[1]

### 4. Medical Care

Davis next contends that Officer Jones violated Davis's constitutional right to adequate medical treatment.

In the Fifth Circuit,

> there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care. . . . When the alleged unconstitutional conduct involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights . . . .

*Gibbs v. Grimmette*, 254 F.3d 545, 548-49 (5th Cir. 2001) (citations omitted). In medical care cases, "deliberate indifference means the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999) (quotation marks and citation omitted).

---

[1] The discovery must also be limited to the alleged physical assault. Davis's allegations regarding being placed in a cell with a violent, mentally ill detainee fail to state a claim for excessive force, since she has not alleged that the other detainee injured her.

7

Taking Davis's allegations as true, she has not stated a claim for a violation of her constitutional right to adequate medical care. She asked Officer Jones to secure medical treatment for the swelling and bruising on her wrists. But because that injury was de minimis, *see supra*, it did not present a substantial risk of serious harm.[2] And while Davis alleges that her later requests for medical attention to her leg and back injuries were intentionally ignored, she made those requests to unnamed jail staff, not Officer Jones.

As a result, the medical care claims against Officer Jones must be dismissed.

### 5.     Supervisory Liability

To hold Sheriff Lewis accountable in this suit, the amended complaint had to allege that he: (1) "failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) (citations omitted). Deliberate indifference in this context means alleging "at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Id.* (quotation marks and citations omitted). "Deliberate indifference implies an official's actual knowledge of facts showing that a risk of serious harm exists as well as the official's having actually drawn that inference." *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010) (citation omitted).

Davis has not sufficiently alleged the deliberate indifference element. Explaining why requires a brief discussion of the two exhibits to her amended complaint upon which her supervisory liability claim relies: an October 2, 2014 "Report of the Grand Jury" of Hinds County, and a May 21, 2015 findings letter from the United States Department of Justice.

---

[2] The same conclusion applies to Officer Jones' alleged denial of Davis's requests for blankets, which Davis later refers to as "medical blankets."

The Report of the Grand Jury summarily recommends additional training for jail officers, but does not describe a pattern of similar excessive force violations caused by inadequate training. It could not give Sheriff Lewis actual knowledge that this kind of constitutional violation was likely.

The Department of Justice letter, in contrast, *does* describe significant training deficiencies at the Hinds County jail, as well as excessive force violations by staff. It may have been sufficient to state a claim against Sheriff Lewis in this case, *if* it had been published before Davis's injuries. But the letter was published five months after she was hurt by Officer Jones. And whether Sheriff Lewis was, after May 21, 2015, aware of and deliberately indifferent to a pattern of inadequate training which caused excessive force violations, says nothing about whether he was aware of or deliberately indifferent to that problem in December 2014.

As a result this claim too must be dismissed.

### 6. Remaining Constitutional Claims

The above analysis renders moot Davis's cruel and unusual punishment argument. *See Eason v. Frye*, 972 F. Supp. 2d 935, 941 (S.D. Miss. 2013). And the defendants are correct that Davis has not articulated how she was denied equal protection of the law. Her brief, in fact, seeks liability against the County because the injuries she suffered were allegedly common, well-known to County policymakers, and ignored. But there cannot be an equal protection violation if Davis was treated the same as everyone else.

The result is that this motion for judgment on the pleadings is granted in part and denied in part.

## IV. Conclusion

The state-law claims are dismissed as to all defendants. The federal claims asserted against the individual defendants are dismissed, with the exception of the excessive force claim against Officer Jones, which shall proceed to immunity-related discovery under the Magistrate Judge's supervision. Within 10 days, the parties shall contact her chambers to proceed with the case.

**SO ORDERED**, this the 23rd day of May, 2016.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE