**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**CHAKAKHAN R. DAVIS**                                                          **PLAINTIFF**

**V.**                                                                           **CAUSE NO. 3:15-CV-874-CWR-LRA**

**HINDS COUNTY, MISSISSIPPI;**                              **DEFENDANTS**
**TYRONE LEWIS; JERRY ARINDER;
BRENDA JONES; JOHNNY JENKINS**

## ORDER

Defendant Brenda Jones has filed a motion for summary judgment and a motion to strike. Before addressing the merits, a brief preliminary statement is necessary.

Plaintiff Chakakhan Davis is a recreational litigant. Between 2011 and 2013, she filed "at least 17" slip-and-fall claims against Wal-Mart, Auto Zone, Walgreens, Dollar General, and other retailers. *Davis v. Wal-Mart Stores*, No. 3:14-CV-375-HTW-LRA, Docket No. 115 at 4 (S.D. Miss. Mar. 28, 2016). Public records show at least eight lawsuits in this Court alone against companies, government agencies, and law enforcement officers, and one suspects there are many more suits scattered among Mississippi's state courts. Davis is in her early 30s. Her career is just beginning.[1]

Davis's credibility has been called into question by the court. For example, when Judge Wingate inquired into Davis's finances pursuant to her motion to amend her in forma pauperis application—she had claimed to be too poor to pay the filing fee—the dishonesty and evasiveness he unearthed over a four-day evidentiary hearing led him to dismiss her entire lawsuit with prejudice. *Id.* That is a significant finding reserved for the most egregious misconduct.

---

[1] Naturally, she plans to apply for law school. *Davis*, No. 3:14-CV-375-HTW-LRA, Docket No. 115 at 4.

The undersigned has set aside Davis's credibility problem, as well as the accusatory tone in which she presents her arguments, to resolve this case as any other—on the evidence and the law. In what follows, the Court will explain why the evidence and law require summary judgment to be denied. Davis's excessive force claim must be resolved by a jury, not a judge. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

And yet, the Court would urge Davis to proceed with caution. In this or any other case, should a judge make findings that Davis has engaged in vexatious litigation or acted in bad faith, the judge may (among many other potential sanctions) issue an Order requiring Davis to receive prior court approval before filing any new lawsuit in this district. *See Prewitt v. Alexander*, 173 F.R.D. 438, 442-44 (N.D. Miss. 1996). One hopes we need not reach that point.

**I.     Background**

On December 8, 2014, Chakakhan Davis was arrested in Hinds County, Mississippi, for disturbing the peace. Upon her arrival at the jail, Davis says she asked Detention Officer Brenda Jones for medical attention. Officer Jones and a colleague allegedly responded by threatening Davis, slamming her against the wall, placing her in a choke hold, and pressing a knee into her lower back. This suit followed.[2]

Several of Davis's claims have already been dismissed. *See Davis v. Hinds Cty., Miss.*, No. 3:15-CV-874-CWR-LRA, 2016 WL 2994097 (S.D. Miss. May 23, 2016). This Order

---

[2] Davis has filed at least one other excessive force suit against Officer Jones. *See Davis v. Hinds Cty., Miss.*, No. 3:16-CV-674-DPJ-FKB, 2017 WL 2269010, at *7 (S.D. Miss. May 23, 2017) (dismissing claim). The other case arose out of a different visit to the county jail.

considers her excessive force claim against Officer Jones. Officer Jones denies the allegations and invokes the doctrine of qualified immunity.

## II. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a factual dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the nonmovant's burden." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

"These rules apply equally to *pro se* litigants. Although *pro se* pleadings must be viewed liberally, such plaintiffs are still required to follow Rule 56 of the Federal Rules of Civil Procedure." *Horton v. Faurecia Automotive*, No. 3:13-CV-21-DPJ-FKB, 2014 WL 2196310, at *2 (S.D. Miss. May 27, 2014).

B.     **Qualified Immunity**

"Qualified immunity shields government officials from civil damages liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 578 (5th Cir. 2009) (quotation marks and citation omitted). The doctrine "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 391 (5th Cir. 2017) (quotation marks and citations omitted).

When qualified immunity is invoked at the summary judgment stage, the Court must determine (1) "whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights," and (2) "whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007) (citations omitted).[3] In determining whether a defendant's actions were objectively unreasonable, the Court considers "the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions." *Id.* at 411.

"Once a defendant has raised qualified immunity, the burden shifts to the plaintiff to demonstrate that qualified immunity does not apply." *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013) (citation omitted).

---

[3] "The court applies current law to the first step and the law at the time of the incident to the second step, which may sometimes result in applying different tests to the two steps." *Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008) (quotation marks and citation omitted); *see Thompson v. Upshur Cty., TX*, 245 F.3d 447, 457 (5th Cir. 2001).

## C. Substantive Law

The Constitution forbids detention officers from using excessive force on pretrial detainees. *See Kitchen v. Dallas Cty., Tex.*, 759 F.3d 468, 477 (5th Cir. 2014), *abrogated by Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015). At the time of Davis's arrest, the legal standard was articulated in this way: "a constitutional violation occurs where a detention officer uses force maliciously and sadistically for the very purpose of causing harm to the pretrial detainee, rather than in a good faith effort to maintain or restore discipline." *Id.* (quotation marks and citations omitted).

Excessive force claims require courts to consider "the extent of injury suffered, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (quotation marks and citations omitted); *accord Kingsley*, 135 S. Ct. at 2475. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Ballard v. Burton*, 444 F.3d 391, 402 (5th Cir. 2006) (quotation marks and citation omitted).

Whether the force used was objectively reasonable is a question of law for the Court to resolve. *Carnaby v. City of Houston*, 636 F.3d 183, 188 (5th Cir. 2011); *see Kinney v. Weaver*, 367 F.3d 337, 346-47 (5th Cir. 2004) (en banc).

## III. Discussion

### A. The Record

The parties begin by disputing what should be included in the summary judgment record. After the immunity-related discovery deadline passed and Officer Jones filed this motion for summary judgment, the record should have been closed. Davis saw it differently. She

5

supplemented her discovery responses, amended her deposition testimony, and filed a cross-motion for summary judgment. Jones now asks to strike the supplementation, amendment, and the cross-motion as untimely.

Davis is a frequent filer who is well-aware of her duties under the Local and Federal Rules. *See supra*; Docket No. 99 (denying Davis's motions to expand the record). Her supplementation came months too late, after the discovery and motions deadlines had passed, and there is no credible explanation for her delay. As a result, the motion to strike is granted.

**B.     The Merits**

Viewing the evidence in the light most favorable to Davis gives us the following fact pattern: When Davis was escorted into the search room of the jail, Officer Jones balled her fist, put her hand around Davis's throat, said "M-F'er, you bet not move," and called for another guard. Docket No. 74-1, at 20. Officer Jones and the other guard threw Davis against a wall, placed her in a chokehold, and pressed a knee into Davis's back. *Id.* at 20 and 23. Davis testified, "I was not -- no type of way uncooperative," and explained that "I could not comply, I guess, if you want to say with the search orders because both my wrists and stuff were swollen and stuff." *Id.* at 22. Davis says Officer Jones's conduct caused back injuries and mental distress. *Id.* at 30. Several subsequent trips to the emergency room resulted in an injection for pain, a prescription for a narcotic pain reliever, and ibuprofen. *Id.* at 35; Docket No. 93. A CT scan of her back was negative. Docket No. 93.

The above evidence is hardly conclusive. According to Officer Jones, "Davis was combative and uncooperative, even rolling around on the floor of the facility, exclaiming 'I ain't fixin' to get locked up!'" Docket No. 74-3, at 2. Because Davis would not submit to a standard intake search and would not calm down, Jones escorted Davis to a holding cell—sans

chokehold—for safety. Docket No. 74-4. The medical records are less than helpful, too: while some show that Davis presented to the emergency room complaining of back pain caused by a detention officer, others reveal that she had a long history of back pain—leaving it unknown whether the jailhouse incident truly aggravated her symptoms.[4]

A jury examining this evidence might agree that there was no force, no injury, or that Officer Jones was nevertheless entitled to qualified immunity. The Court presumes the jury will have the benefit of testimony from the other witnesses present that day: Detention Officer Melinda Miller Dillard and Sergeant Chendretta Hall. At the summary judgment stage, however, the evidence must be construed in the light most favorable to the nonmovant. *See Chacon v. York*, 434 F. App'x 330, 332-33 (5th Cir. 2011) (reversing district court's grant of summary judgment in Section 1983 excessive force action where district court improperly credited deputy's version of events). Parties pursuing such motions must always be cognizant of this standard. So, viewing the evidence in that light suggests that Davis *was* deprived of her right to be free from excessive force, since detention officers cannot inflict harm upon otherwise-compliant pretrial detainees.

The factual dispute also precludes a finding on the objective reasonableness of Officer Jones's actions. If Davis was truly complying with the Officer's commands, the level of force used would be objectively unreasonable and rise to the level of malice or sadism. If the

---

[4] The disputed ER records state that Davis's back pain was "chronic," started well-before the run-in with Officer Jones, and had "no known cause." They add that Davis "denies new injury or symptoms." Davis claims (without evidence) that the doctor who created these records "misunderstood," but the problem is confirmed by other evidence. Five months before the jail incident, Davis was treated at the ER for "back pain with sciatica." Two months before the jail incident, Davis was diagnosed with "lumbar radiculopathy." And in her deposition, Davis admitted that she suffered from "excruciating back pain" ever since a *2011* incident with Hinds County deputy sheriffs.

testimony shows otherwise, it might be appropriate to grant qualified immunity at the close of evidence.

Other decisions from this district support denying qualified immunity in this specific context. Earlier this year, Judge Jordan denied qualified immunity to a Hinds County Detention Officer when the plaintiff testified that "while he was attempting to comply with the officers' directive, [Detention Officer] Moore 'grabbed [him] around [his] throat, pushed [his] head up against the wall, drug [him] across the hall, pushed [his] head up against the wall over there and put his knee in [the plaintiff's] back.'" *Cry v. Dilliard*, No. 3:15-CV-318-DPJ-FKB, 2017 WL 2172944, at *5 (S.D. Miss. May 16, 2017). Chief Judge Guirola once denied qualified immunity to a Harrison County Detention Officer where the plaintiff presented evidence that the Officer "slammed a handcuffed [plaintiff] down, kneed the back of [plaintiff's] neck, pulled his leg over his head, and shackled him to a bench for an hour and a half only because he spoke up for the woman and for himself." *Vanderburg v. Harrison Cty., Miss. ex rel. Bd. of Supervisors*, 716 F. Supp. 2d 482, 486 (S.D. Miss. 2010). Yet another decision denied qualified immunity to a Madison County Detention Officer where the parties sharply disputed whether a take-down and alleged choking were provoked, whether the amount of force wielded was reasonable, and whether the plaintiff sustained any injuries. *Wilks v. Watson*, No. 3:13-CV-688-DPJ-FKB, 2015 WL 728343, at *3–4 (S.D. Miss. Feb. 19, 2015); *see also Watts v. Smart*, 328 F. App'x 291, 293 (5th Cir. 2009) (vacating summary judgment and remanding for trial where videotape evidence "shows that Watts was struck numerous times and kneed several times as he lay face down on the floor of the booking area").

Like her counterparts in the above cases, Officer Jones presses that qualified immunity is appropriate because the extent of Davis's injuries is disputed. It certainly is true that "[a]n inmate

8

who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (citation omitted). Several of Davis's claims were dismissed at the start of this case for that very reason.

At the same time, it also is true that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* The question is one of proportions: "the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances." *Davis v. Hinds Cty., Miss.*, No. 3:16-CV-674-DPJ-FKB, 2017 WL 2269010, at *7 (S.D. Miss. May 23, 2017) (quotation marks and citations omitted). Judge Jordan summarized the law well in his own *Davis v. Jones* case when he wrote that "as long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id.* (quotation marks and citations omitted).

Here, the persistent factual disputes on Davis's compliance, the force used on her (which her evidence indicates far exceeds a push or shove), and her claimed injuries are sufficient to meet this legal standard. A jury must be allowed to weigh this evidence, assess the credibility of the witnesses, and draw its reasonable inferences from the evidence.

**IV.  Conclusion**

The motion to strike is granted. The motion for summary judgment is denied.

**SO ORDERED**, this the 22nd day of September, 2017.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE

9