---

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**



**CHAKAKHAN R. DAVIS**                                                   **PLAINTIFF**

**Vs.**                                            **CIVIL ACTION NO. 3:15-CV-874-CWR-LRA**

**HINDS COUNTY, MISSISSIPPI, ET AL.
DEFENDANTS**

**REBUTTAL MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS MOTION TO DECLARE A MISTRIAL**

COMES NOW, pursuant to the Section (s) § 455 (a-b) of the U. S. Constitution., Cannon 3 (C) of the Codes of Judicial Conduct for Federal Judges, Liteky, Equity Rule 59, Fed. R. Civ. P. 59 (a-b)(d)., et al., Ms. Chakakhan R. Davis respectfully file this *Rebuttal Memorandum of Law in Support of Plaintiffs Motion to Declare a Mistrial.* In support hereof, Ms. Davis would show unto this Honorable Court the following:

### I.   PRELIMINARY ASSESSMENT

In this proceeding, extrajudicial[1] and public comments made by the Honorable Judge Carlton W. Reeves on September 22nd 2017reflects that he has prejudged the merits of this case, without giving the Plaintiff a fair chance to be heard. United States v. Womack, 454 F.2d 1337, 1340-41. (5th Cir. 1972). Whereas, such demeaning comments, remarks or gestures toward Ms. Davis upon the basis of race undermines both the appearance of impartiality and the integrity of this proceeding and warrants the courts grant act of a new trial under Rule 59 (a-b) (d) of the Fed. R. Civ. P.   Notably, on September 22nd 2017 Judge Reeves had made public comment in an order upon the Defendant Brenda Jones contention

---

1  A settlement, statement, or confession not made in court; out-of-court.

1

of QI.    However, such comment and other prejudicial misbehavior indicates that he would not impartially

adjudicate this case; in Ms. Davis should be given a new trial under Section (s) § 455 (a-b) of the U. S.

Constitution., Cannon 3 (C) of the Codes of Judicial Conduct, Liteky, and Mississippi Law. See, e.g., Rule 59

(a-b) (d) of the Fed. R. Civ. P., and Article 3, Section § 24 of the Mississippi Constitution which provides:

{T}hat all courts shall be open; and every person for an injury done to him in his lands, goods, person, or

reputation, shall have remedy by due course of law, and right and justice shall be administered without

sale, denial, or delay.    Summarily, on September 22nd 2017 the Undersigned U.S. District Courts Judge

entered an order in this action which stated that the Plaintiff in this action had been deceptive in the case

of Davis v. Walmart Stores East LP. Cause No. 3:14-cv-375-HTW-LRA., and possibly others (allegedly).

CM/ECF Doc No. 100.    Furthermore, Judge Reeves order went on to state that there had been "at least

17" slip and fall claims filed against Walmart, AutoZone, Walgreens, Dollar General and other retailers by

Ms. Davis within the 2011-2013 calendar year. CM/ECF Doc No. 100.    Moreover, that public records show

at least 8 law suits in this court against Companies, Government Agencies, Law Enforcement officers and

many more scattered throughout Mississippi State Courts.    See, e.g., CM/ECF Doc No. 100, where Judge

Reeves superfluously ingested that one needs to reach a point to prevent Ms. Davis from filing other claims

within this Judicial District. That had to stem from such disingenuous fraudulent scheme actions of Judge

Henry T. Wingate entered after IFP status hearings held before him in the case of Walmart (more than likely

for private gain), whereas, the same Magistrate known as Linda R. Anderson presides over this matter. See,

e.g., CM/ECF Doc No. 115 as set forth in *Exhibit "A"* attached hereto. Eloquently, it is conceded by the

Plaintiff in this action that Judge Reeves made these dishonest statements on June 22nd 2017 to dissimulate

the true facts of this case and result it in dismissal as a favor for the County.    Reluctantly, none of the

claims filed by Ms. Davis against the County were filed under Section § 1915 of the United States

Constitution that could have resulted in dismissal with prejudice if allegations of poverty were untrue and would bar other suits from being filed under the IFP Statute by the Plaintiff due to frivolity (which are another reason for the probe into her IFP Status by Judge Wingate). See, e.g., Section § 1915 (e), whereas, it is equivocally conceded by Ms. Davis that Judge Henry T. Wingate made such dishonest statements i.e. statements that were not made by the Plaintiff during the IFP status hearings held in the case of Davis v. Walmart Stores East LP regarding her personal assets and income on March 28th 2015 to result the action in bad faith.   CM/ECF DOC No. 115. However, such conspirators "collectively" known as Judge Henry T. Wingate and Judge Carlton W. Reeves / Linda R. Anderson fraudulent unconscionable executed plot, plan, or scheme within the 2015 calendar year interferes and/or obstructs the due administration of justice in this case and their undisclosed relationship (s) with the County warrants the courts imposition of contempt of court sanctions pursuant to Section (s) 18 U.S.C. § 401 (1-2) and 18 U.S.C. § 1503 (1-2) of the United States Constitution.[2]   However, such rise to a level requiring his disqualification, because the bias in fact "stem from an extrajudicial source that resulted in an dishonest opinion on the merits of this action other than what Judge Reeves acquired from participation in this case." See, e.g., cannon 4 (C) of the Miss. Code

---

2  A **conflict of interest (COI)** is a situation in which a person or organization is involved in multiple interests, financial or otherwise, one of which could possibly corrupt the motivation or decision-making of that individual or organization. The presence of a conflict of interest is independent of the occurrence of impropriety. Therefore, a conflict of interest can be discovered and voluntarily defused before any corruption occurs. A conflict of interest exists if the circumstances are reasonably believed (on the basis of past experience and objective evidence) to create a risk that a decision *may* be unduly influenced by other, secondary interests, and not on whether a particular individual *is actually* influenced by a secondary interest.

A widely used definition is: "A conflict of interest is a set of circumstances that creates a risk that professional judgement or actions regarding a primary interest will be unduly influenced by a secondary interest." *Primary interest* refers to the principal goals of the profession or activity, such as the protection of clients, the health of patients, the integrity of research, and the duties of public officer. *Secondary interest* includes personal benefit and is not limited to only financial gain but also such motives as the desire for professional advancement, or the wish to do favors for family and friends. These secondary interests are not treated as wrong in and of themselves, but become objectionable when they are believed to have greater weight than the primary interests. Conflict of interest rules in the public sphere mainly focus on financial relationships since they are relatively more objective, fungible, and quantifiable, and usually involve the political, legal, and medical fields.

of Jud Cd't, and United States v. Grinnell Corp., 384 U.S. 563, 583 (1966); See also Kemp, 846 S.W.2d at 306.

The United States Supreme Court defines "extrajudicial source" as "a source outside the judicial proceeding

at hand – which would include as extrajudicial sources earlier judicial proceedings conducted by the same

judge (as are at issue here)." Liteky v. United States, 510 U.S. 540, 545 (1994) (interpreting Grinnell as to the

meaning of "extrajudicial source."). However, an exception to the extrajudicial source[3] rule exists when

---

3 See, e.g. Cannon 4 of the Miss. Code of Jud Cd't as follows:

A Judge Shall So Conduct the Judge's Extra-judicial Activities as to Minimize the Risk of Conflict with Judicial
Obligations

A. Extra-judicial Activities in General. A judge shall conduct all of the judge's extra-judicial activities so that they do
not:

(1) cast reasonable doubt on the judge's capacity to act impartially as a judge;
(2) demean the judicial office; or
(3) interfere with the proper performance of judicial duties.

Commentary

Complete separation of a judge from extra-judicial activities is neither possible nor wise; a judge should not become
isolated from the community in which the judge lives.

Expressions of bias or prejudice by a judge, even outside the judge's judicial activities, may cast reasonable doubt on
the judge's capacity to act impartially as a judge.

Expressions which may do so include jokes or other remarks demeaning individuals on the basis of their race, gender,
religion, national origin, disability, age, sexual orientation or socioeconomic status. See Section 2C and accompanying
Commentary.

B. Avocational Activities. A judge may speak, write, lecture, teach and participate in other extra-judicial activities
concerning the law, the legal system, the administration of justice and non-legal subjects, subject to the requirements
of this Code.

Commentary

As a judicial officer and person specially learned in the law, a judge is in a unique position to contribute to the
improvement of the law, the legal system, and the administration of justice, including revision of substantive and
procedural law and improvement of criminal and juvenile justice. To the extent that time permits, a judge is
encouraged to do so, either independently or through a bar association, judicial conference or other organization
dedicated to the improvement of the law. Judges may participate in efforts to promote the fair administration of
justice, the independence of the judiciary and the integrity of the legal profession and may express opposition to the
persecution of lawyers and judges in other countries because of their professional activities.

In this and other Sections of Canon 4, the phrase "subject to the requirements of this Code" is used, notably in
connection with a judge's governmental, civic or charitable activities. This phrase is included to remind judges that the

"such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against

a party." See, e.g., United States v. Holland, 655 F.2d 44, 47 (5th Cir. 1981). **4**

## II.   LEGAL STANDARDS

Contra wise, for the reasons set forth in Plaintiffs 3rd Motion for Recusal of Judge Carlton W. Reeves

and Motion for Prospective Relief of the Undersigned's order filed on July 16th 2018, Ms. Davis highly avers

that such immoral conduct of Judge Reeves tainted this case, whereas, a fair and impartial trial could not

be received warranting the court to declare a mistrial. See, e.g., FRCP 59 (a-b) (d); and State v. Meyer, 953

S.W.2d 822, 824 (Tex. App. – Corpus Christi 1997, no pet.).   Particularly, Judge Reeves failure to recuse

from the case are violative of the due process clause of Fourteenth Amendment of the United States

Constitution. See, e.g., Caperton v. A.T. Massey Coal Co., 129 S. Ct. 2252 (2009) a case concerning

disqualification of a State Supreme Court Justice, and the U.S. Supreme Court reaffirmed that litigants have

a due process right to an impartial Judge, and that under circumstances in which judicial bias was probable,

---

use of permissive language in various Sections of the Code does not relieve a judge from the other requirements of
the Code that apply to the specific conduct

4 See also, e.g., Section 18 U.S. Code § 401 that provide as follows:

{T}hat a court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such
contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
(2) Misbehavior of any of its officers in their official transactions;
(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

(June 25, 1948, ch. 645, 62 Stat. 701; Pub. L. 107–273, div. B, title III, § 3002(a)(1), Nov. 2, 2002, 116 Stat. 1805.)

See also, e.g., Section 18 U.S.C. § 1503 where the U.S. Supreme Court observed that this portion of § 1503(a) "serves
as a catchall", prohibiting any endeavor to impede the administration of justice that is not prohibited by other, more
specific provisions. U.S. v. Aguilar, 515 U.S. 593, 115 S. Ct. 2357, 132 L.Ed.2d 520 (1995). As such, the Court applied a
"nexus" requirement in its construction of § 1503, holding that the endeavor "must have a relation in time, causation,
or logic with the judicial proceedings" and must have the " 'natural and probable effect' of interfering with the due
administration of justice." See, e.g., Id. (quoting United States v. Wood, 6 F.3d 692, 696 (10th Cir.1993); In re Hipp,
Inc., 895 F.2d 1503, 1512 (5th Cir. 1990) (quoting Ex parte Robinson, 86 U.S. 505, 510 (1873) FDIC v. LeGrand, 43 F.3d
163, 168 (5th Cir. 1995); Lamar Financial Corp. v. Adams, 918 F.2d 564, 566 (5th Cir. 1990) and Knight v. U.S. 310 F.2d
305, 307 (5th Cir.1962).

due process required disqualification.**5**   Moreover, in this case there can be no doubt that a reasonable person looking at the totality of the circumstances under Section § 455 (a-b), Rule 60 (d) (3) of the Fed. R. Civ. P., and Liteky would harbor doubts" about the Undersigned's impartiality in that a new trial should be granted.   Nevertheless, the appearance of impropriety that Judge Reeves had also given on July 13th 2018 by denying an unopposed Motion to Continue to Pre-Trial / Jury or Non-Jury Trial Dates in this action filed by Ms. Davis on July 2[nd] 2018 clearly evinces the kind of biased and prejudicial misconduct of Federal Judges to the administration of justice that Section § 455 (a-b) of the United Stated Constitution seeks to eviscerate by requiring an impartial judges recusal from a given action.

### III.   DISCUSSION OF THE LAW

Section 28 U.S.C. § 455 of the United States Constitution provides:

{T}hat any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

The right to an impartial judge is a bedrock constitutional right. In the words of the United States Supreme Court, "[a] fair trial in a fair tribunal is a basic requirement of due process." In re Murchison, 349 U.S. 133, 136 (1955). The Due Process clause "may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way, 'justice must satisfy the appearance of justice.'" Murchison, 349 U.S. at 136; Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 825 (1986). See United States v. Jordan, 49 F. 3d 152, 157 (5th Cir. (Tex.) 1995). Bias is a common law ground for judicial disqualification when the bias is of such character that it denies a defendant due process. See Kemp v. State, 846 S.W.2d 289, 305 (Tex. Crim. App. 1992); McClenan v. State, 661 S.W.2d 108, 109 (Tex. Crim. App. 1983). To rise to a level requiring

---

5 The U.S. Supreme Court has stated that the objective recusal standard reflects the fundamental right, guaranteed by the Due Process Clause, to present one's case to an impartial tribunal. Caperton, 556 U.S. at 876; See also, e.g., In re Murchison, 349 U.S. at 136 ("A fair trial in a fair tribunal is a basic requirement of due process.").

disqualification, the bias alleged must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." United States v. Grinnell Corp., 384 U.S. 563, 583 (1966); see also Kemp, 846 S.W.2d at 306. The United States Supreme Court defines "extrajudicial source" as "a source outside the judicial proceeding at hand – which would include as extrajudicial sources earlier judicial proceedings conducted by the same judge (as are at issue here)." Liteky v. United States, 510 U.S. 540, 545 (1994) (interpreting Grinnell as to the meaning of "extrajudicial source."). However, an exception to the extrajudicial source rule exists when "such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party (an exception also exists in this case)." See, e.g., United States v. Holland, 655 F.2d 44, 47 (5th Cir. 1981) (finding bias requiring judicial disqualification when the trial court judge made remarks that reflected a personal prejudice against the appellant for successfully appealing his conviction on the basis of the judge's actions during the prior trial). "A trial judge ruling on a motion alleging bias as a ground for disqualification must decide whether the movant has provided facts sufficient to establish that a reasonable man, knowing all the circumstances involved, would harbor doubts as to the impartiality of the trial judge." Kemp, 846 S.W.2d at 305. See also, Chitimacha Tribe of Louisiana v. Harry L. Laws Co., 690 F. 2d 1157, 1165 (5th Cir. 1982).

### (A).
### The Interest Of Justice And Equity So Requires
### That The Plaintiff Be Given A New Trial.

By this motion, the Plaintiff highly avers that it are timely and thus warranted by the facts and circumstances of this case.   See, e.g., Rule 59 (b) of the Fed. R. Civ. P., and Equity Rule 59. Accordingly, there exists an age-old and well-established principle that every court has power to act ex debito justitiae to do that real and substantial justice for the administration of which alone it exists. Summarily, just like it has an inherent duty to prevent abuse of the existing processes of the court and is not powerless to grant

7

such relief (s) when the ends of justice and equity so demand under the circumstances of a given case in the interest of justice. Eichelberger v. Eichelberger, 582 S.W.2d 395, 398 (Tex. 1979). Consequently, the prejudicial remarks that Judge Reeves made in his order on September 22nd 2017 explicitly discloses his bias and prejudgment towards the Plaintiff in this matter, whereas, the interest of justice and equity so demand that Ms. Davis be given a new trial. See, e.g., Rule 59 (a-b) (d) of the Fed. R. Civ. P., and Equity Rule 59. With overall brevity, in the case of United States v. Microsoft Corp., the D.C. Circuit disqualified a judge based on statements to the media about a pending case, and at the decision's core was a concern for the "appearance of impartiality."

> Judge Learned Hand spoke of "this America of ours where the passion for publicity is a disease, and where swarms of foolish, tawdry moths dash with rapture into its consuming fire...." LEARNED HAND, THE SPIRIT OF LIBERTY 132-33 (2d ed. 1953). Judges are obligated to resist this passion. Indulging it compromises what Edmund Burke justly regarded as the "cold neutrality of an impartial judge." Cold or not, federal judges must maintain the appearance of impartiality. What was true two centuries ago is true today: "Deference to the judgments and rulings of courts depends upon public confidence in the integrity and independence of judges." CODE OF CONDUCT Canon 1 cmt. Public confidence in judicial impartiality cannot survive if judges, in disregard of their ethical obligations, pander to the press. Id. at 115

Summarily, the Microsoft court worried that members of the public at large would "reasonably question as to whether the District Judge's desire for press coverage influenced his judgments" and concluded, therefore, that the judge's "interviews with reporters created an appearance that he was not acting impartially." Id. at 115. The appearance of impartiality, interpreted through statutory provisions, ethical codes and the reasonable person standard, is critical in determining whether a judge may sit.[6]

---

6  The essence of fair judging is an open mind. Justice Anthony Kennedy wrote:

> If a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified. Indeed, in such circumstances, I should think that any judge who understands the judicial office and oath would be the first to insist that another judge hear the case. Liteky v. United States, 114 S.C. 1147, 1162 (1994)(Kennedy, J., concurring). Further, that the Preamble of the Texas Code of Judicial Conduct states the same principle: Our legal system is based on the principle that an independent, fair and competent judiciary will interpret and apply the laws that govern us. The role of the judiciary is central to American concepts of justice and the rule of law. Intrinsic to all sections of this Code of Judicial Conduct are the precepts that judges, individually and

Particularly, in this action Judge Reeves has engaged in a pattern of corrupt judicial misconduct that is incompatible with the public's trust placed in him by defrauding the United Stated Governments out of one of its lawful functions under 18 U.S.C. § 371[7] that clearly demonstrates his unfitness to serve as a District Courts Judge that believe in preserving the appearance of justice, liberty, integrity and the legitimacy of the respective court.[8] The courts have made clear, in different contexts, that a judge must

---

collectively, must respect and honor the judicial office as a public trust and strive to enhance and maintain confidence in our legal system. The judge is an arbiter of facts and law for the resolution of disputes and a highly visible symbol of government under the rule of law. See, e.g., Rogers v. Bradley, 909 S.W.2d 872, 881 (Tex. 1995) (Enoch, J., responding to declaration of recusal). Justice Kennedy's concurrence can be reconciled with the majority's reasoning, along the lines of Justice Enoch's opinion in the Rogers case: "I would ask whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge's conduct, would have a reasonable doubt that the judge is actually impartial." Rogers, 909 S.W.2d at 881. A judge is subject to recusal when the average person in the street could reasonably doubt the judge's impartiality.

7 See, e.g., *Hass v. Henkel*, 216 U.S. 462 (1910), and *Hammerschmidt v. United States*, 265 U.S. 182 (1924). In *Hass* the Court stated:

The statute is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of government . . . (A)ny conspiracy which is calculated to obstruct or impair its efficiency and destroy the value of its operation and reports as fair, impartial and reasonably accurate, would be to defraud the United States by depriving it of its lawful right and duty of promulgating or diffusing the information so officially acquired in the way and at the time required by law or departmental regulation. *Hass*, 216 U.S. at 479-480. In *Hammerschmidt*, Chief Justice Taft, defined "defraud" as follows:

To conspire to defraud the United States means primarily to cheat the Government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the Government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane or the overreaching of those charged with carrying out the governmental intention. See also, e.g., https://www.justice.gov/usam/criminal-resource-manual-923-18-usc-371-conspiracy-defraud-us.

8 The courts often observe that to convict under this omnibus or "catchall" provision of Section § 1503, the government must prove beyond a reasonable doubt: "(1) that there was a pending judicial proceeding, (2) that the defendant knew this proceeding was pending, and (3) that the defendant then corruptly endeavored to influence, obstruct, or impede the due administration of justice." United States v. Quattrone, 441 F.3d 153, 170 (2d Cir. 2006)(emphasis added)("In order to convict for obstruction of justice under the omnibus clause of Section § 1503, the government must establish (1) that there is a pending judicial or grand jury proceeding constituting the administration of justice. . ."); accord, United States v. Weber, 320 F.3d 1047, 1050 (9th Cir. 2003); United States v. Fassnacht, 332 F.3d 440, 447 (7th Cir. 2003); United States v. Steele, 241 F.3d 302, 304-5 (3d Cir. 2001); United States v. Sharpe, 193 F.3d 852, 864 (5th Cir. 1999); United States v. Layne, 192 F.3d 556, 572 (6th Cir. 1999); United States v. Frankhauser, 80 F.3d 641, 650-51 (1st Cir. 1966); United States v. Littleton, 76 F.3d 614, 618-19 (4th Cir. 1996); contra, United States v. Novak, 217 F.3d 566, 571-72 (8th Cir. 2000); see also United States v. Vaghela, 169 F.3d 729, 732-34 (11th Cir. 1999)(pendency not necessarily required in cases of conspiracy to violate Section 1503); United States v. Bruno, 383 F.3d 65, 87 (2d Cir. 2004)(proceedings need not be pending but there must be evidence from which to infer that they were anticipated in the case of a conspiracy to violate Section § 1503). United States v. Brown, 459 F.3d 509, 530-31 (5th Cir. 2006)(false testimony before the grand jury).

be disqualified when a judge predetermines an individual's guilt or sentence without allowing that

individual to be heard. See, e. g., United States v. Clements, 634 F.2d 183, 186-87 (5th Cir. 1981); United

States v. Sciuto, 531 F.2d 842, 844-47 (7th Cir. 1976); United States v. Thompson, 483 F.2d 527 (3rd Cir.

1973); United States v. Townsend, 478 F.2d 1072 (3rd Cir. 1973); United States v. Womack, 454 F.2d 1337,

1340-41. (5th Cir. 1972).[9]  Whereas, it is also conceded by the Plaintiff that Judge Reeves refused to recuse

from this case in furtherance of the overt act of the conspiracy with the rest of its conspirators with the

sole intent of defrauding the United States Government of its money, property, and one of lawful functions

under Section 18 U.S.C. § 371 of the United States Constitution (bribes-schemes). However, the elements

of an conspiracy to defraud the United States are: (1) an agreement of two or more individuals; (2) to

defraud the United States; and (3) an overt act by one of the conspirators in furtherance of the scheme.

United States v. World Wide Moving, 411 F.3d 502, 516 (4th Cir. 2005); United States v. Ballistrea, 101 F.3d

827, 832 (2d Cir. 1996).[10]  Nevertheless, under 18 U.S.C. § 1503 of the United States Constitution it was

---

9  Rule 59 (a) of the Fed. R. Civ.P., provides:

(1)     Grounds for New Trial. The court may, on motion, grant a new trial on all or some of the issues—and to any party—
        as follows:

        (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal
        court; or
        (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in
        federal court.

(2)     Further Action After a Nonjury Trial. After a nonjury trial, the court may, on motion for a new trial, open the
        judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make
        new ones, and direct the entry of a new judgment.

10  See also, e.g., Glasser v. United States, 315 U.S. at 66 ("The indictment charges that the United States was defrauded by
depriving it of its lawful governmental functions by dishonest means (i.e. to interfere with or obstruct one of its lawful
governmental functions by deceit, craft or trickery, or at least by means that are dishonest"); it is settled that this is 'defrauding.
The scheme may be designed to deprive the United States of money or property, but it need not be so; a plot calculated to
frustrate the functions of a governmental entity will suffice. Hammerschmidt v. United States, 265 U.S. at 188 ("It is not
necessary that the government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official
action and purpose shall be defeated by misrepresentation. . ."); United States v. World Wide Moving, 411 F.3d 502, 516 (4th
Cir. 2005); United States v. Goldberg, 105 F.3d 770, 773 (1st Cir. 1997); United States v. Ballistrea, 101 F.3d 827, 832 (2d Cir.

known or should have been known of by Judge Wingate, Reeves and Anderson that justice were to be

administered in this case and that their conspiracy (ies) interfered with the due administration thereof. This

clearly goes to the heart of this case (i.e. as to whether a fair trial has been received) that necessitates a

new trial. See, e.g., Phillips v. Join Legislative Committee on Performance & Expenditure Review, 637 F.2d

1014, 1019 (5th Cir. 1981), cert denied, 456 U.S. 960 (1982). In the instant cause any "reasonable person"

would be convinced that bias exists toward Ms. Davis from the Undersigned and, certainly, s/he "would

harbor legitimate doubts" about the Judges impartiality. See also, e.g., Johnson v. Pumjani, 56 S.W. 3d 670,

672 (Tex. App. Houston 2001).    Notably, in Pumjani the court observed that the impartiality of a judge is

not only a matter of constitutional law but of public policy, as well. See id.

> Beyond the demand that a judge be impartial, however, is the requirement that a judge appear to
> be impartial so that no doubts or suspicions exist as to the fairness or integrity of the court. The
> judiciary must strive not only to give all parties a fair trial but also to maintain a high level of public
> trust and confidence. The legitimacy of the judicial process is based on the public's respect and on
> its confidence that the system settles controversies impartially and fairly. Judicial decisions rendered
> under circumstances that suggest bias, prejudice or favoritism undermine the integrity of the courts,
> breed skepticism and mistrust, and thwart the very principles on which the judicial system is based.
> The judiciary must be extremely diligent in avoiding any appearance of impropriety and must hold
> itself to exacting standards lest it lose its legitimacy and suffer a loss of public confidence. See, e.g.,
> Sun Exploration and Prod. Co. v. Jackson, 783 S.W. 2d 202, 206 (Tex. 1989).

> See also, e.g., 1997), Aguilar v. Anderson, 855 S.W.2d 799, 804-805 (Tex. App. El Paso 1993) (Osborn,
> C.J., concurring) as follows:

> Public policy demands that a judge who tries a case act with absolute impartiality. It further
> demands that a judge appear to be impartial so that no doubts or suspicions exist as to the fairness
> or the integrity of the court. Judicial decisions rendered under circumstances that suggest bias,
> prejudice or favoritism undermine the integrity of the courts, breed skepticism and mistrust, and
> thwart the principles on which the judicial system is based."

---

1996) (internal citations omitted) (This "provision 'not only reaches schemes which deprive the government of money or
property, but also is designed to protect the integrity of the United States and its agencies'"); United States v. Dean, 55 F.3d
640, 647 (D.C. Cir. 1995)(internal citations omitted)(If "the government's evidence showed that Dean conspired to impair the
functioning of the department of the Housing and Urban Development, 'no other form of injury to the Federal Government
need be established for the conspiracy to fall under §371'").

In this action, Judge Reeves willful failure to Recuse from this case negates the Plaintiffs fundamental due process right to a fair and impartial trial, whereas, judicial bias in this action are more than probable. Caperton v. A.T. Massey Coal Co., 129 S. Ct. 2252 (2009). Nevertheless, disqualification of a judge from acting in a proceeding in which he is not wholly free, disinterested,[11] and independent is intended not merely for the benefit of the parties to the suit, who are entitled to the cold neutrality of an impartial judge, but for the general interests of justice, by preserving the purity and impartiality of the courts, and the respect and confidence of the people for their decisions. See, e.g., 46 AM JUR. 2D, Judges § 86.

WHEREFORE PREMISES CONSIDERED, for the foregoing reasons, Ms. Davis respectfully request (s) this court to grant this Motion in its entirety.

This the 24th day of August 2018,

Respectfully Submitted,
MS.   CHAKAKHAN R. DAVIS, PETITIONER

By: _____
32942 / 50 Hwy 18, Utica, MS 39175

---

11  See, e.g., Section 18 U.S. Code § 371, § 401 and 18 U.S.C. § 1503.

## CERTICATE OF SERVICE

By my signature above, pursuant to ***Rule 5 (b) (2)*** of the ***Fed. R. Civ. P***, I hereby certify that I have electronically filed ***Rebuttal Memorandum of Law In Support of Plaintiffs Motion to Declare a Mistrial*** with the U. S. District Courts Clerk (Northern Division) using the CM/ECF system which automatically sent notification of such filing to the following individual/s:

1. Mr. William R. Allen., and
2. Ms. Jessica S. Malone.
   ALLEN, ALLEN, BREELAND & ALLEN, PLLC
   P.O. Box 751
   214 Justice Street
   Brookhaven, MS 39601/2
   Tel: (601) 833-4361
   Fax: (601) 833-6647
   Email: wallen@aabalegal.com
   Email: jmalone@aabalegal.com

*Undersigned Counsel for the Defense.*

Respectfully Submitted, this, the 24th day of August 2018.

MS.    CHAKAKHAN R. DAVIS, PETITIONER

All Rights Reserved.

13